UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BETTY RODRIGUEZ,

              Plaintiff,

-against-

LUNITA'S CAFÉ AND DELI CORP d/b/a
Lunita's Restaurant and PABLO LUNA,

              Defendant.

**ORDER**

21 Civ. 3909 (PGG) (SLC)

---

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, Plaintiff Betty Rodriguez brings claims against Defendants for overtime, minimum wage, wage notice, and wage statement violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law. (Cmplt. (Dkt. No. 1))

        On December 16, 2022, Defendants filed a pre-motion letter seeking permission to file a summary judgment motion. (Dkt. No. 43) Defendants state that they are entitled to summary judgment for, inter alia, the following reasons:

> As the FLSA has a two-year statute of limitations, any violations claimed to have occurred prior to May 4, 2019 (two years prior to filing of the complaint) are time barred.
>
> . . . .
> The corporate [D]efendant, Lunita's Cafe & Deli Corp. . . . , did not have an annual dollar volume of sales or business done of at least $500,000 during any of the years that [P]laintiff Betty Rodriguez was employed. . . . As a result, defendants are not a covered enterprise under the federal wage and hour[] laws, nor subject to FLSA requirements. 29 U.S.C. § 203(s)(1)(A)(ii). . . . To support this position, [D]efendants intend to rely upon the corporate defendant's federal and state tax returns, which show annual "Gross Receipts or Sales" ranging in amount from $57,964 (2016) to $257,546 (2018); Profit and Loss statements for the years 2016 through 2019, showing "Total Income" ranging from $57,963.65 (2016) to $257,546.17 (2018); checking account statements from January 2017 through December 2020, showing transactions consistent with these totals; and [D]efendant Pablo Luna's testimony that the corporate [D]efendant first began operating the café where [P]laintiff worked in 2016, that he did not have any

> involvement or ownership interest in any related businesses during the relevant time period, and that the annual volume of sales for the business was less than $500,000.
>
> . . . .
>
> Defendants will also seek summary judgment on plaintiff's Second Cause of Action, alleging violation of federal minimum wage requirements, as it is contradicted by the Plaintiff's own factual assertions. The federal minimum wage for the relevant period was $7.25 per hour. See 29 U.S.C. §206. Plaintiff testified at her deposition that she was hired at an hourly rate of $9.50 per hour. Further, [P]laintiff testified that she worked a maximum of 66 hours per week. Plaintiff's deposition testimony, as well as the allegations in the Complaint, indicate that, during any given week. she never received less than $700 in wages. Thus, there is no factual support for a claimed violation of federal minimum wage laws.
>
> . . . .
>
> At her deposition, Ms. Rodriguez asserted that she began working for [D]efendants at 54 hours per week; that after 1-2 years she began working 66 hours per week; and that at some point she chose to reduce her hours to 63 hours per week. Defendant Luna's testimony differs as to Ms. Rodriguez's typical number of weekly hours, but concurs that Ms. Rodriguez never worked more than 66 hours per week. Therefore, [D]efendants will seek partial summary judgment on that part of plaintiffs' Third Cause of Action (alleging violations of NYLL's overtime requirements), and that part of [P]laintiff's Fourth Cause of Action, (alleging violations of NYLL's minimum wage requirements), which seek compensation for hours allegedly worked in excess of 66 per week.
>
> . . . .
>
> Finally, [D]efendants will seek partial summary judgment on that part of [P]laintiff's Third Cause of Action which alleges that [P]laintiff was paid a fixed amount per week, regardless of the number of hours worked, or in the alternative, a finding of material fact on this point pursuant to Fed. R. Civ. Proc. 56(g). This allegation, too, is belied by [P]laintiff's own deposition testimony. Ms. Rodriquez testified that she was hired at an hourly rate of $9.50 per hour. Her deposition testimony clearly alleges that at some point, her weekly hours were increased to a fixed 66 per week, and that she was then paid $750 every week. This amount is consistent with a rate of $9.50 per hour for 66 hours per week 40 hours of regular time at $9.50/hour is $380, and 26 hours of overtime at $14.25/hour is $370.50, totaling $750.50 per week).

(Id. at 1-3)

In her December 21, 2022 opposition letter, Plaintiff disputes Defendants' arguments regarding (1) whether Defendant Lunita's Café had gross receipts of at least

$500,000; (2) whether Plaintiff worked more than 66 hours a week; and (3) whether Plaintiff was paid a fixed weekly rate regardless of hours worked. (Dkt. No. 44)

As to Lunita's Café's earnings, Plaintiff states:

> Plaintiff can show that Defendants earned more than $500,000 annually. Testimony from the parties and a non-party will establish that the restaurant was open 7 days a week for 17 hours a day and sold 200 meals a day that cost, at a minimum, $8 a meal. Therefore, Defendants earned no less than $1,600 a day and therefore $11,200 a week. Accordingly, Defendants earned no less than $582,400 annually ($11,200*52 weeks). Plaintiff can therefore show that there is a question of material fact as to whether Defendants earned $500,000 or more in gross revenue.

(Id. at 2)

As to how many hours per week she worked, Plaintiff states that she "testified that she would work past her regular schedule on some occasions to cover the shift of another employee. Therefore, there is a material issue of fact as to whether Plaintiff worked more than 66 hours in those weeks and the Court should deny summary judgment on this issue." (Id.)

As to whether Plaintiff was paid a fixed rate per week regardless of hours worked, Plaintiff states:

> Although Defendants in their letter claim that they paid Plaintiff a set rate of $9.50 per hour for her regular hours and $14.50 for her overtime hours, there is not a single piece of evidence supporting this allegation. There are no pay records, paystubs, or any other records that establish that Defendants paid Plaintiff an hourly rate of pay. Further, Plaintiff testified that Defendants paid her a $750 weekly salary for most of her employment and that she received an additional $100 in a week if she worked extra. Defendant Luna also testified that he paid Plaintiff $750 a week or more if she worked extra. There is therefore no evidence to support Defendants' allegation that it paid Plaintiff an hourly rate, and the Court should deny this motion.

(Id. at 3)

The purpose of this Court's Individual Rule of Practice requiring pre-motion letters is to enable this Court to determine whether a proposed motion is likely to be productive. In the context of a proposed motion for summary judgment, the primary issue is whether the

3

briefing is likely to present material issues of fact. Based on Defendants' pre-motion letter and Plaintiff's opposition, this Court is concerned that the motion papers may present material issues of fact in at least three areas.

First, Defendants contend that Lunita's Café earned less than $500,000 in gross revenue per year during the years at issue, and that Defendants intend to rely on their "federal and state tax returns," "Profit and Loss statements," "checking account statements," and "[D]efendant Pablo Luna's testimony" to prove this fact. (Def. Ltr. (Dkt. No. 43) at 2) Plaintiff argues, however, that "[t]estimony from the parties and a non-party will establish that . . . . Defendants earned no less than $582,400 annually," based on the restaurant's hours, meals served, and price per meal. (Pltf. Opp. (Dkt. No. 44) at 2) Based on these conflicting statements, it appears that there may be an issue of fact as to whether Lunita's Café had gross receipts of at least $500,00 per year.

Second, Defendants argue that Plaintiff's deposition testimony established that Plaintiff did not work more than 66 hours per week. (Def. Ltr. (Dkt. No. 43) at 2-3) Plaintiff, however, states that in her deposition, she in fact "testified that she would work past her regular schedule on some occasions to cover the shift of another employee." (Pltf. Opp. (Dkt. No. 44) at 2) Based on these conflicting statements, it appears there may be an issue of fact as to whether Plaintiff worked more than 66 hours per week.

Third, Defendants argue that they did not pay Plaintiff "a fixed amount per week, regardless of the number of hours worked," because her rate of pay of $750 per week was consistent with the state minimum wage rate for a 66-hour schedule, which they contend she worked. (Def. Ltr. (Dkt. No. 43) at 3) Plaintiff, however, states that "[t]here are no pay records, paystubs, or any other records that establish that Defendants paid Plaintiff an hourly rate of pay.

4

Further, Plaintiff testified that Defendants paid her a $750 weekly salary for most of her employment and that she received an additional $100 in a week if she worked extra. Defendant Luna also testified that he paid Plaintiff $750 a week or more if she worked extra." (Pltf. Opp. (Dkt. No. 44) at 3) Based on these conflicting statements, it appears that there may be an issue of fact as to whether Defendants paid Plaintiff a flat weekly rate.

It is not clear from the parties' correspondence what the evidentiary support is for their conflicting positions.

Accordingly, the parties will file supplemental letters setting out the evidentiary support for all factual assertions in their correspondence – whether deposition testimony, affidavit, documentary, or otherwise. All cited evidence will be submitted with the parties' supplemental letters. In the event that the relevant evidence reveals fact disputes, Defendants will explain why those issues are not material or why those factual disputes can be resolved as a matter of law.

Plaintiff will file her supplemental letter by **April 14, 2023**. Defendants will file their supplemental letter by **April 21, 2023**. The Clerk of Court is directed to terminate the motion (Dkt. No. 43) as moot.

Dated: New York, New York
      April 7, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge