USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BETTY RODRIGUEZ,

                Plaintiff,

- against -

LUNITA'S CAFÉ AND DELI CORP d/b/a
Lunita's Restaurant and PABLO LUNA,

                Defendants.

---

**ORDER**

21 Civ. 3909 (PGG) (HJR)

PAUL G. GARDEPHE, U.S.D.J.:

      In this action, Plaintiff Betty Rodriguez alleges Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") minimum wage, overtime, wage notice, and wage statement claims against Lunita's Café and Deli Corp. ("Lunita's") and Pablo Luna, who was the president and sole shareholder of Lunita's (collectively, "Defendants"). (Cmplt. (Dkt. No. 1)) Defendants moved for summary judgment, arguing that they are not subject to the FLSA based on Lunita's gross volume of sales. (Def. Br. (Dkt. No. 74) at 7-10) In the alternative, Defendants seek an order pursuant to Federal Rule of Civil Procedure 56(g) stating that Defendants have established that (1) "Plaintiff's typical weekly work schedule did not exceed 66 hours per week"; and (2) "Plaintiff was paid at an hourly rate, not [a] weekly[] rate." (Id. at 11-15)

      This Court referred Defendants' motion to the assigned magistrate judge for a Report and Recommendation ("R&R"). (Dkt. No. 69) On October 31, 2024, Magistrate Judge Henry J. Ricardo issued a 26-page R&R recommending that this Court (1) deny Defendants' motion for summary judgment; (2) grant Defendants' request for a Rule 56(g) order stating that Defendants have established that Plaintiff typically worked no more than 66 hours per week; and

(3) deny Defendants' request for a Rule 56(g) order stating that Defendants have established that Plaintiff was paid on an hourly rather than a weekly basis. (R&R (Dkt. No. 84))

For the reasons stated below, Judge Ricardo's R&R will be adopted in its entirety.

## BACKGROUND[1]

### I.    FACTS

Lunita's was a restaurant in Peekskill, New York, that was owned by Luna until it ceased operations in 2022. (Luna Dep. (Dkt. No. 78-2) at 20:5-22, 22:4-14, 24:2-5)[2]

Plaintiff Rodriguez was employed at Lunita's from August 2015 through September 6, 2020. (Rodriguez Dep. (Dkt. No. 78-1) at 22:24-23:14, 27:2-11) Plaintiff's job responsibilities included preparing food, cooking and cleaning the kitchen. (Id. at 53:14-54:12) Between August 2015 and April 2020, Plaintiff worked a shift from 3:00 a.m. to 2:00 p.m., seven days a week. (R&R (Dkt. No. 84) at 2) Beginning in May 2020, Plaintiff worked from 3:00 a.m. to 2:00 p.m. six days per week, and from 3:00 a.m. to 11:00 a.m. on Sundays. (Id.)

When Plaintiff was hired at Lunita's, she was told that she would be paid $9.50 per hour. (Rodriguez Dep. (Dkt. No. 78-1) at 25:5-13, 50:17-51:2)) After her first year, however, Plaintiff was paid a flat weekly sum of $750 per week. (Id.) When Plaintiff worked extra shifts at the restaurant, she was paid an additional flat sum of $100. (Id. at 51:17-25) Defendants paid Plaintiff partly in cash, and partly by check. (Id. at 52:19-53:7) According to

---

[1] The parties have not objected to Judge Ricardo's factual statement. Accordingly, this Court adopts it in full. See Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the [c]ourt adopts [the factual statement] in full.").

[2] Except as to deposition transcripts, the page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing ("ECF") system. For depositions, citations are to the pagination assigned by the court reporter.

Plaintiff, Defendants did not pay her the applicable minimum wage or overtime when she worked over forty hours a week, and did not provide her with proper wage notices and wage statements during her employment at Lunita's. (Id. at 26:16-20)

## II.     PROCEDURAL HISTORY

The Complaint was filed on May 3, 2021, and alleges minimum wage, overtime, wage notice, and wage statement violations under the FLSA and the NYLL. (Cmplt. (Dkt. No. 1) ¶¶ 22-41)

On April 24, 2024, Defendants moved for summary judgment (Dkt. No. 71), arguing that they are not subject to the FLSA based on Lunita's gross sales. (Def. Br. (Dkt. No. 74) at 7-10) In the alternative, Defendants seek a Rule 56(g) ruling that they have established that (1) "Plaintiff's typical weekly work schedule did not exceed 66 hours per week"; and (2) "Plaintiff was paid at an hourly rate, not [a] weekly[] rate." (Id. at 11-15) On April 29, 2024, Plaintiff submitted an opposition to Defendants' motion. (Pltf. Opp. (Dkt. No. 81)) Defendants' submitted a reply on May 2, 2024. (Def. Reply (Dkt. No. 83))

In an October 31, 2024 R&R, Judge Ricardo recommends that (1) Defendants' motion for summary judgment be denied; and (2) Defendants' request for a Rule 56(g) order be granted as to their assertion that Plaintiff typically worked no more than 66 hours per week, but denied as to Defendants' assertion that Plaintiff was paid on an hourly, rather than a weekly basis. (R&R (Dkt. No. 84) at 6-7, 23-25)

In his R&R, Judge Ricardo notifies the parties that, "[p]ursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure [they] have fourteen (14) days from service of this Report and Recommendation to file written objections." (Id. at 26) The R&R further states that a "failure to file objections within fourteen (14) days will result in a

3

waiver of objections and will preclude appellate review." (Id.) (emphasis omitted) (citing, inter alia, Thomas v. Arn, 474 U.S. 140 (1985))

No party has objected to the R&R.

## DISCUSSION

I. **LEGAL STANDARDS**

    A. **Review of a Magistrate Judge's Report and Recommendation**

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where, as here, no timely objection has been made to a magistrate judge's R&R – despite clear warning that a failure to file objections will result in a waiver of judicial review – judicial review has been waived. See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); see also Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report.").

This rule is "non[-]jurisdictional," however, and because "its violation may be excused in the interests of justice," DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)), this Court has considered whether there is any "'clear error on the face of the record'" that precludes acceptance of Judge Ricardo's recommendations. Wingate v. Bloomberg, No. 11 Civ. 188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee's note); see also Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.").

"Clear error is found only when, upon review of the entire record, the Court is left with 'the definite and firm conviction that a mistake has been committed.'" Grant v. Gonyea, No. 19CV743AJNDCF, 2022 WL 1173341, at *1 (S.D.N.Y. Apr. 20, 2022) (quoting Laster v. Mancini, No. 07-CV-8265 (DAB) (MHD), 2013 WL 5405468, at *2 (S.D.N.Y. Sept. 25, 2013)).

B. **Rule 56 Standard for Summary Judgment**

Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact" and that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)). "[T]hat opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment,' in that contradictory testimony only establishes a 'genuine' issue for trial if it 'lead[s] to a different legal outcome.'" Yi Fu Chen v. Spring Tailor, L.L.C., 14 Civ. 218 (PAE), 2015 WL 3953532, at *4 (S.D.N.Y. June 29, 2015) (brackets in original) (quoting Krynski v. Chase, 707 F. Supp. 2d 318, 322 (E.D.N.Y. 2009)).

In deciding on a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, "[a] party

5

may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (second alteration and omissions in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

"'Where, as here, the burden of persuasion at trial would be on the non-moving party[,] . . . the party moving for summary judgment may satisfy [its] burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (omissions in original) (quoting Farid v. Smith, 850 F.2d 917, 924 (2d Cir. 1988)).

"Ordinarily, when a district court is asked to consider contradictory deposition testimony of a fact witness at summary judgment, 'a district court may not discredit a witness's deposition testimony[,] . . . because the assessment of a witness's credibility is a function reserved for the jury.'" Moll v. Telesector Res. Grp., Inc., 760 F.3d 198, 206 (2d Cir. 2014) (omission in original) (quoting Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010)). However, "factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). "If there is a plausible explanation for discrepancies in a party's testimony, [however,] the court considering a summary judgment motion should not disregard the later testimony because of an earlier account

that was ambiguous, confusing, or simply incomplete." <u>Langman Fabrics v. Graff Californiawear, Inc.</u>, 160 F.3d 106, 112 (2d Cir. 1998).

C. **FLSA Coverage**

In order for the FLSA to be applicable to a wage and hour claim, a plaintiff "must establish the jurisdictional prerequisite of either enterprise or individual coverage." <u>Gomez v. El Rancho de Andres de Tres Inc.</u>, No. CV 2012-1264(CBA)(MDG), 2014 WL 1310296, at *3 (E.D.N.Y. Mar. 11, 2014). Here, Plaintiff contends that the FLSA is applicable pursuant to "enterprise coverage." (<u>See</u> Pltf. Opp. (Dkt. No. 81) at 1, 7-12)

An enterprise is "engaged in commerce or in the production of goods for commerce" under the FLSA if (1) it "has employees engaged in commerce or in the production of goods for commerce," or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) its "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A). "Enterprise coverage has been interpreted broadly by the courts. So long as the employer achieves an annual gross business volume of $500,000 or more, '<u>all</u> of the employer's employees are covered under [the FLSA] as long as at least <u>some</u> handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce.'" <u>Ethelberth v. Choice Sec. Co.</u>, 91 F. Supp. 3d 339, 355 (E.D.N.Y. 2015) (emphases and alterations in original) (first quoting <u>Boekemeier v. Fourth Universalist Soc'y</u>, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000); then quoting <u>Jones v. E. Brooklyn Security Services Corp.</u>, No. 11-CV-1021, 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012)).

## II. ANALYSIS

### A. Whether the FLSA Gross Sales Threshold is Met

In moving for summary judgment, Defendants contend that the "testimonial and documentary evidence indicates that the corporate defendant's gross volume of sales was far less than $500,000 per year" for the relevant time period, and that therefore Lunita's is "not a covered enterprise under the [FLSA]." (Def. Br. (Dkt. No. 74) at 8-10)[3]

Plaintiff counters that she has proffered evidence sufficient to create a material issue of fact as to whether Lunita's annual gross sales amounted to $500,000 or more. (Pltf. Opp. (Dkt. No. 81) at 10-13)

Plaintiff worked at Lunita's from August 2015 to September 2020 (Rodriguez Dep. (Dkt. No. 78-1) at 27:7-11), and she filed her Complaint on May 3, 2021. (Cmplt. (Dkt. No. 1)) The statute of limitations for an FLSA claim is "two years after the cause of action accrued" or, if the "cause of action aris[es] out of a willful violation . . . within three years after the cause of action accrued." 29 U.S.C. § 255(a). Assuming arguendo that Defendants' conduct constitutes a "willful violation" of the FLSA such that the three-year statute of limitations applies,[4] the relevant time period for determining Lunita's gross volume of sales is May 3, 2018 to September 6, 2020, when Plaintiff's employment at Lunita's ended. Given that Plaintiff

---

[3] As Judge Ricardo notes, "Defendants do not dispute the first requirement of FLSA enterprise coverage: that Lunita's had employees engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." (R&R (Dkt. No. 84) at 6 n.2)

[4] "Because the issue of whether an employer is covered by the FLSA [is] dispositive of the entire action," this Court will "defer[] ruling on the applicable statute of limitations at the summary judgment stage." Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 357 n.14 (E.D.N.Y. 2015) (citing Cooke v. General Dynamics Corp., 993 F. Supp. 56, 65-66 (D. Conn. 1997)).

concedes that Lunita's did not have gross sales of $500,000 or more during 2020 – allegedly as a result of the COVID-19 pandemic (Tully Decl., Ex. E (May 5, 2023 Pltf. Ltr.) (Dkt. No. 72-5) at 1) – this Court's analysis focuses on Lunita's gross sales in 2018 and 2019.

In support of their claim that Lunita's had gross sales of less than $500,000 during 2018 and 2019, Defendants offer Lunita's tax returns, profit and loss statements prepared by Lunita's accountant, Lunita's bank statements for 2018 and 2019, and Luna's affidavit, in which he states that – based upon his personal knowledge and observations – Lunita's annual volume of sales did not amount to $500,000 or more during 2018, 2019, or 2020. (Def. Br. (Dkt. No. 74) at 8-10; Dkt. Nos. 73-1-3)

As Judge Ricardo notes, although "courts have granted summary judgment [on the grounds] that a defendant is not an 'enterprise' within the meaning of the FLSA based on the strength of a defendant's tax records[,] . . . courts have denied summary judgment where there was other evidence undermining the credibility of the defendant's tax returns and related documents." (R&R (Dkt. No. 84) at 12 (internal citations omitted)); see Amparo v. Ink Point Tattoo, No. 13 CIV. 07232 LGS, 2015 WL 224360, at *3 (S.D.N.Y. Jan. 15, 2015) ("Courts in this Circuit . . . routinely rely on tax returns in determining [the] FLSA's applicability at the summary judgment stage."); Monterossa v. Martinez Rest. Corp., No. 11-CV-3689, 2012 WL 3890212, at *3-4 (S.D.N.Y. Sept. 7, 2012) (finding that plaintiffs had created a material issue of fact – despite defendants' submission of tax returns showing annual gross revenues well below $500,000 – by proffering evidence that the tax returns were "inconsistent with [d]efendants' own records," including a handwritten log of the restaurant's expenses and wages showing that it had paid significantly more in wages than claimed on the tax returns, as well as sworn statements from employees as to defendants' daily gross revenue).

In concluding that there are material issues of fact with respect to Lunita's gross sales in 2018 and 2019, Judge Ricardo points to several factors that "undermin[e] the credibility" of Lunita's tax returns. (R&R (Dkt. No. 84) at 12)

As an initial matter, Defendant Luna admits that he used cash from the register to pay certain vendors. (Luna Dep. (Dkt. No. 78-2) at 44:7-25; see Pltf. Opp. (Dkt. No. 63) at 25) Cash receipts used for this purpose would not be reflected in Lunita's tax returns or bank statements, as this cash was never deposited into a financial institution. See Quintanilla v. Pete's Arbor Care Svcs., Inc., No. 19-CV-6894 (JMA) (ARL), 2023 WL 4237473, at *7 (E.D.N.Y. June 12, 2023), report and recommendation adopted, 2023 WL 4238863 (E.D.N.Y. June 28, 2023) (denying defendants summary judgment on FLSA claim; the "Court cannot rely on the [tax return and bank deposit] evidence offered by the defendants, given [defendants'] admission that [they] did not report all the cash payments received on [the company's] tax returns. . . .").

Moreover, the employee salary and wage amounts listed on Lunita's tax returns do not correlate with other parts of the summary judgment record. (R&R (Dkt. No. 84) at 13) For example, Rodriguez testified that she was paid $750 per week in 2018 and 2019, which would amount to $37,500 in wages on an annual basis, assuming 50 weeks of work a year. (Rodriguez Dep. (Dkt. No. 78-1) at 50:21-52:2) However, Lunita's tax returns show only $5,694 in employee salaries and wages in 2018, and $18,471 in 2019. ((Dkt. No. 73-1) at 1, 30) In sum, Lunita's tax returns do not reflect Plaintiff's wages – much less the wages of Lunita's other employees. (See Luna Dep. (Dkt. No. 78-2) at 56:2-3, 65:8-12 (testifying that at least two other employees worked at Lunita's); see also Amaya v. Superior Tile & Granite Corp., No. 10 CIV. 4525 PGG, 2012 WL 130425, at *4-5 (S.D.N.Y. Jan. 17, 2012) (denying defendant summary judgment after finding that its tax returns were "entirely unreliable" and "utterly inconsistent

10

with a business employing six to eight workers full time, each earning $35,000 or more annually," and where the defendant "operated largely a cash business")).

Finally, Plaintiff has submitted declarations from herself and another former Lunita employee who has personal knowledge of the restaurant's operations, representing that Lunita's gross sales in 2018 and 2019 exceeded the $500,000 FLSA threshold. In Rodriguez's declaration, she estimates that Lunita's served at least 70 meals at each of breakfast, lunch, and dinner every weekday, plus 160 meals on each of Saturday and Sunday. (Rodriguez Decl. (Dkt. No. 78-3) ¶¶ 2, 8) Rodriguez estimates that the average weekday meal cost between $5.00 and $10.00, and that the average weekend meal cost between $10.00 and $22.00. (Id. ¶¶ 6, 8; Rodriguez Dep. (Dkt. No. 78-1) at 44:21-45:10) Treating Rodriguez's estimates conservatively, Lunita's annual sales in 2018 and 2019 would amount to about $569,920 – reflecting 1,370 meals sold per week, times $8.00 per meal, times 52 weeks per year. (R&R (Dkt. No. 84) at 14-16); Pltf. Opp. (Dkt. No. 81) at 6-7)

Plaintiff has also offered a declaration from Hector Lopez, who worked as a cook at Lunita's from August 2019 to July 2020. (Lopez Decl. (Dkt. No. 78-4) ¶ 2) Lopez's responsibilities at Lunita's included cooking and ordering "food and ingredients" for the restaurant. Lopez ordered "approximately $7,000 a week in food and ingredients [before the pandemic] and $5,000 after the pandemic began." (Id. ¶ 6) Accepting Lopez's estimates for the weekly cost of food and ingredients during 2019, Lunita's would have spent approximately $364,000 on foodstuffs during that year – far more than the $215,674 that the restaurant reported on its 2019 tax return. (R&R (Dkt. No. 84) at 15) Lopez also estimates that Lunita's served between 200 and 250 meals per day from Monday to Friday, at a minimum of $10 a plate, and about 300 meals on each of Saturday and Sunday, at approximately $18 per meal. (Lopez Decl.

11

(Dkt. No. 78-4) ¶¶ 7-9) In sum, Lopez's estimates for gross sales in 2019 exceed Rodriguez's estimates, and likewise call into question the accuracy and reliability of Defendants' tax return evidence. (See R&R (Dkt. No. 84) at 15; see also Bin Gao v. Jian Song Shi, No. 118CV02708ARRJO, 2019 WL 3936810, at *6 (E.D.N.Y. Aug. 20, 2019) ("[C]ourts in this circuit have denied motions for summary judgment supported by tax returns where the plaintiff offers sworn testimony with contradicting evidence based on personal experience working at the restaurant."); Monterossa, 2012 WL 3890212, at *4 (denying defendant summary judgment on FLSA claim where the reliability of defendant's tax returns was undermined by the "sworn testimony of the named Plaintiffs, each of whom attests that the [] Restaurant grossed between $2,000 and $5,000 [per] day[,] . . . [such that] it would gross well over $500,000 annually"))

Defendants argue, however, that the Rodriguez and Lopez declarations should not be considered, because (1) Plaintiff did not list either herself or Lopez in response to Defendants' Interrogatory No. 1, which seeks the names of "[p]ersons with knowledge or information concerning defendants' gross annual sales over $500,000" (Def. Reply (Dkt. No. 83) at 4-6; Taubenfeld Decl., Ex. 6 (Dkt. No. 78-6) at 7); (2) Rodriguez or Lopez do not have the "requisite personal knowledge to make . . . estimates" about meals sold or prices per meal; and (3) the declarations are inconsistent with one another and/or with the declarants' deposition testimony. (Id. at 4-9)

As to Defendants' preclusion argument under Federal Rule of Civil Procedure 37,[5] where such an objection is raised, courts consider four factors: "'(1) the party's explanation

---

[5] Rule 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006) (brackets in original) (quoting Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)). Preclusion is a "'harsh remedy' that should be exercised sparingly," given the "'preference to have issues and claims decided on their merits, rather than on the basis of a procedural shortcoming.'" Vista Food Exch., Inc. v. Comercial De Alimentos Sanches S de R L de C.V., 627 F. Supp. 3d 408, 417 (S.D.N.Y. 2022) (quoting Cargill, Inc. v. Sears Petroleum & Transp. Corp., 334 F. Supp. 2d 197, 247 (N.D.N.Y. 2004)).

As to explanation, Plaintiff states that the failure to list herself and Lopez in response to Defendants' interrogatory was "inadvertent[]." (Pltf. Opp. (Dkt. No. 81) at 14) As to importance, neither side disputes that the evidence at issue is important to the motion. (Id.; Def. Reply (Dkt. No. 83) at 5 ("The importance of [Rodriguez and Lopez's] testimony in this regard cannot be overstated, as it serves as the predominant basis to challenge the testimony of defendant Luna and the records of the corporate defendant on a threshold issue. . . .")) As to prejudice, Defendants contend that they have been "greatly prejudice[ed]": because Defendants did not know "that [P]laintiff would rely on her own estimates and those of Hector Lopez to establish defendants' gross volume of sales, defendants had no reason to pursue additional discovery from these two individuals on that subject." (Def. Reply (Dkt. No. 83) at 5) As to "the possibility of a continuance," given that no trial date has been set, additional discovery may still be sought. (R&R (Dkt. No. 84) at 11; see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 962 (2d Cir. 1997) (considering whether a trial date had been set in evaluating the availability of a continuance).

After considering all four factors, Judge Ricardo finds that "the 'harsh remedy' of preclusion" is "not warrant[ed]." (R&R (Dkt. No. 84) at 8-11 (citing Vista Food., 627 F. Supp. 3d at 417)); see also New World Sols., Inc. v. NameMedia Inc., 150 F. Supp. 3d 287, 306 (S.D.N.Y. 2015) ("precluding evidence is a 'drastic remedy' that 'should be exercised with caution'" (quoting DVL, Inc. v. Gen. Elec. Co., 811 F.Supp.2d 579, 589 (N.D.N.Y. 2010), aff'd sub nom. DVL, Inc. v. Niagara Mohawk Power Corp., 490 Fed. Appx. 378 (2d Cir. 2012))).

As to prejudice – the central factor at issue – Judge Ricardo notes that Defendants "not only deposed Rodriguez, but actually questioned her about the subjects addressed in her declaration, i.e., the number of meals served per day and the prices of those meals." (R&R (Dkt. No. 84) at 10 (emphasis in original) (citing Rodriguez Dep. (Dkt. No. 78-1) at 42-45)) Judge Ricardo concludes that, given the "undisputed importance of the Rodriguez and Lopez testimony and the absence of substantial prejudice, [P]laintiff's failure to list Rodriguez and Lopez in response to subpart (I) of Interrogatory 1, while listing them in response to other subparts of Interrogatory 1, does not warrant . . . preclusion." (Id. at 11) This Court finds no clear error in Judge Ricardo's determination.

As to Defendants' argument that Rodriguez and Lopez lack the knowledge necessary to estimate Lunita's annual gross sales, although both worked as cooks, Luna testified that the cooks, including Rodriguez, occasionally worked at the buffet and at the cash register. (Luna Dep. (Dkt. No. 78-2) at 79:22-80:5, 95:17-96:7)[6] And even as cooks, Rodriguez and Lopez would have been well situated to estimate the number of meals that the restaurant served

---

[6] Although there is conflicting testimony on this point (see Rodriguez Dep. (Dkt. No. 78-1 at 48:19-24 (testifying that she never worked as a cashier)), this Court agrees with Judge Ricardo that – given Luna's testimony – "it is for the trier of fact to determine whether and under what circumstances Rodriguez worked at the cash register." (R&R (Dkt. No. 84) at 16)

14

each day. Indeed, Judge Ricardo finds that because "Rodriguez prepared meals at the restaurant six days a week," "a reasonable jury [could] conclude that she was in a position to estimate the number of meals that Lunita's served and the average price per meal." (R&R (Dkt. No. 84) at 16) As to Lopez, acknowledging that he worked at Lunita's for only about five months in 2019, and did not work at the restaurant in the mornings, "[a] reasonable jury could determine that the time period when Lopez worked was representative of the remainder of the year, and, as the individual in charge of ordering food and cooking the lunch and dinner meals, Lopez could estimate the quantity of breakfast meals sold." (Id. at 17)

This Court agrees with Judge Ricardo that there is sufficient evidence to find that Rodriguez and Lopez have the personal knowledge necessary to estimate Lunita's gross sales in 2019. (Id.)

Finally, as to Defendants' argument that inconsistencies between the declarations, and between Rodriguez's declaration and her deposition testimony, require that the declarations be precluded, this Court finds that any inconsistencies go to the weight of this evidence and not to its admissibility. As to Rodriguez, Defendant complains (see Def. Reply (Dkt. No. 83) at 7-9) that while Rodriguez says in her declaration that Lunita's sold upwards of "210 meals per day" (Rodriguez Decl. (Dkt. No. 78-3) ¶¶ 2-3), at deposition – when asked "[o]n a typical day, approximately how many customers would you see during your time at Lunita's?" – Plaintiff responded by saying "[m]ore than 60 people on a daily basis." (Rodriguez Dep. (Dkt. No. 78-1) at 41:25-43:7) But as Judge Ricardo points out, these statements are not necessarily in contradiction:

> [a] reasonable trier of fact, reading this longer excerpt and resolving all ambiguities in Rodriguez's favor, could conclude that when Rodriguez testified that she saw "[m]ore than 60 people on a daily basis" she was referring to the number of customers served at lunch, as opposed to the total number of meals served during a typical day.

15

(R&R (Dkt. No. 84) at 18-19) (brackets in original)  This Court finds no clear error in Judge Ricardo's analysis.

Finally, while Rodriguez and Lopez's estimates of the number of meals sold and the prices of those meals differ (compare Rodriguez Decl. (Dkt. No. 78-3) ¶ 8 (estimating 160 meals on each Saturday and each Sunday) with Lopez Decl. (Dkt. No. 78-4) ¶ 9 (estimating 300 meals on each Saturday and each Sunday), a "reasonable fact finder, weighing these declarations and the Rodriguez deposition testimony against Luna's testimony and documentation, could find [P]laintiff's evidence [as to Lunita's annual gross sales more] credible."  (R&R (Dkt. No. 84) at 21; see also Diaz v. Bronx Pawnbroker Inc., No. 18-CIV-7590, 2021 WL 809490, at *4 ("Any determination regarding the credibility of figures stated in the tax documents or the affidavits [from employees regarding gross sales] is . . . properly left to the fact-finder.")

In sum, this Court finds no clear error in Judge Ricardo's determination that material issues of fact exist as to whether the FLSA gross sales threshold is reached. Accordingly, Defendants' motion for summary judgment will be denied.

B.     **Requested Rule 56(g) Findings**

Fed. R. Civ. P. 56(g) provides that where a court does not grant all the relief requested in a summary judgment motion, "it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).  Here, Defendants seek, in the alternative to full summary judgment, a Rule 56(g) ruling that (1) "Plaintiff's typical weekly work schedule

did not exceed 66 hours per week"⁷; and (2) Plaintiff was paid on an hourly basis and not on a weekly basis. (Def. Br. (Dkt. No. 74) at 11-15)

As to work schedule, while the Complaint alleges that Plaintiff regularly worked between 74 and 77 hours per week (Cmplt. (Dkt. No. 1) ¶ 17), Plaintiff testified at deposition that she regularly worked 54 hours per week during 2018, and 66 hours per week thereafter. (Rodriguez Dep. (Dkt. No. 78-1) at 24:16-25:4, 28:4-16, 46:24-47:8). And in Plaintiff's response to Defendant's Rule 56.1 Statement, she admitted that "[d]uring her first year at Lunita's, [P]laintiff's typical hours did not exceed 54 hours per week," and "[i]n subsequent years, [P]laintiff's typical hours did not exceed 66 hours per week." (Pltf. R. 56.1 Response (Dkt. No. 77) ¶¶ 15-16)

Based on this record, Judge Ricardo finds that the parties do not dispute that Plaintiff's typical work schedule did not exceed 66 hours per week, and recommends that Defendants' request for a Rule 56(g) ruling concerning this issue be granted. (R&R (Dkt. No. 84) at 24) This Court finds no clear error in Judge Ricardo's analysis. Accordingly, this Court will grant Defendants' request for a Rule 56(g) order stating that Plaintiff's typical work schedule did not exceed 66 hours per week.

As to whether Plaintiff was paid on an hourly or weekly basis, there is conflicting evidence. At deposition, Rodriguez testified that she was told – prior to her employment – that

---

⁷ In arguing that Defendants' request for a Rule 56(g) order on this issue should be denied, Plaintiffs complain that Defendants seek "a finding that Plaintiff never worked more than 66 hours in any one week." (Pltf. Opp. (Dkt. No. 81) at 16) As Judge Ricardo points out, however, "this overstates [D]efendants' request; they seek a finding about Rodriguez's typical work hours, not a finding that she never worked beyond those hours." (R&R (Dkt. No. 84) at 23) (emphasis in original) Indeed, both sides agree that Rodriguez sometimes worked more than 66 hours a week, as a result of taking on additional shifts. (Def. Br. (Dkt. No. 74) at 11-12; Pltf. Opp. (Dkt. No. 81) at 5)

she would be paid at a rate of $9.50 per hour (Rodriguez Dep. (Dkt. No. 78-1) at 25:5-13), and that at some point Luna "told me he would pay me 750 dollars a week." (Id. at 50:21-51:2) Defendants point out that $9.50 per hour for a 66-hour work week – with time and a half being paid after 40 hours – would amount to about $750, and that the "fact that Ms. Rodriguez was paid weekly does not transform an hourly pay rate into a weekly pay rate," given that wages calculated by the hour are often paid once per week. (Def. Br. (Dkt. No. 74) at 13-15)

At deposition, Luna testified that he paid Rodriguez "the hourly rate and the difference in cash . . . [for any extra] hour she stayed there." (Luna Dep. (Dkt. No. 78-2) at 93:17-21) Luna further testified that Rodriguez received "an increase in her hourly rate" sometime between 2018 and 2020. (Id. at 111:22-112:7) A paystub in the record shows that as of February 2019, Rodriguez was paid at an hourly rate of $10.00 per hour. (Taubenfeld Decl., Ex. 5 (Dkt. No. 78-5) at 2)[8]

In concluding that there are material issues of fact concerning whether Plaintiff was paid hourly or at a fixed weekly rate, Judge Ricardo cites Rodriguez's testimony that when she covered extra shifts, Luna "would give me one hundred dollars." (Rodriguez Dep. (Dkt. No. 78-1) at 51:17-25) Judge Ricardo concludes that "a reasonable jury could interpret this testimony to mean that Rodriguez was paid a fixed rate for her work, and then if she covered some or all of an additional shift, she received an additional fixed sum of one hundred dollars, regardless of how many hours she worked." (R&R (Dkt. No. 84) at 25)

This Court finds no clear error in Judge Ricardo's determination that there are material issues of fact as to whether Plaintiff was paid on an hourly or weekly basis, given

---

[8] Plaintiff argues that this paystub was inaccurate because Defendants paid Plaintiff partly in cash, not reflected in this paystub. (Pltf. Opp. (Dkt. No. 81) at 17)

Plaintiff's testimony, including that when she worked an extra shift, she was paid a flat $100. Accordingly, Defendants' request for a Rule 56(g) ruling on this issue will be denied.

## CONCLUSION

For the reasons stated above, Judge Ricardo's R&R is adopted in its entirety. Defendants' motion for summary judgment is denied. Defendants' request for an order pursuant to Rule 56(g) is granted with respect to Plaintiff's "typical hours," but denied as to whether she was paid on an hourly or a weekly basis. The Clerk of Court is directed to terminate the motion (Dkt. No. 71).

Dated: New York, New York
       March 31, 2025

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge